IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL SHELTON HARRIS,

        Plaintiff,

v.                                CIV 19-0472 MV/KBM

SHANE FERRARI, *et al.*,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the following Motions:  Defendants' Motion to Strike Plaintiff's Answer to Amended Complaint and Amended Complaint filed on February 25, 2021 *(Doc. 42)* ("Motion to Strike") and Defendants' *Martinez* Report and Brief in Support of Summary Judgment filed on March 5, 2021 ("Motion") *(Doc. 43)*. United States District Judge Martha Vázquez referred this matter to me on January 7, 2021, for a recommended disposition. *Doc. 38*. After careful consideration of the pertinent law, the parties' briefing, and all exhibits, I will recommend that Defendants' Motion to Strike and their Motion for Summary Judgment be granted.

I.    **Background**

*Procedural Background*

On May 21, 2019, Plaintiff filed a pro se Prisoner Civil Rights Complaint pursuant to 42 U.S.C. § 1983 against San Juan County Sheriff Shane Ferrari, and Senior Administrator of the San Juan County Detention Center ("SJCDC"), Tom Havel. *Doc. 1*. The Complaint alleged that Defendants had violated his constitutional rights when they

housed him, a pretrial detainee, in maximum security with an inmate, Ricky Stallings,

who on March 4, 2019, assaulted him and caused him injury. Plaintiff then filed seven

appendices, notices, and supplemental pleadings and requested an additional § 1983

form. *Docs. 9*; *11*; *14*; *16*; *21*; *24*; *28*. The Court entered an Order Directing Amendment

*(Doc. 32),* which required Plaintiff to file a single legible amended complaint. On

October 30, 2020, Plaintiff filed an amended complaint *(Doc. 33)*.

On November 16, 2020, after conducting a *sua sponte* review of the amended

complaint under 28 U.S.C. § 1915(e), Judge Vazquez entered a Memorandum Opinion

and Order finding that "the Amended Complaint does not show that any Defendant was

involved in the incident or was subjectively aware of the risk of harm." *Doc. 34* at 1.[1]

Because Plaintiff's amended complaint therefore failed to state a cognizable claim, she

dismissed the amended complaint without prejudice but gave Plaintiff permission to file

a second amended complaint. As she elaborated in her Opinion,

> [i]n the context of failure to protect cases, prison officials must be aware of
> specific facts that the attacker could be dangerous, beyond merely being
> disagreeable or having a history of psychological problems. *See, e.g., Miles
> v. Conrad*, 805 F. App'x 607, 611 (10th Cir. 2020) (finding no constitutional
> violation where plaintiff "communicated several times with prison staff that
> [his] cellmate was stealing from him and that they were not getting along,"
> but "none of the . . . reports indicate[d] aggressive or threatening behavior
> by" the attacker); *Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891,
> 894 (10th Cir. 2019) (affirming dismissal of failure to protect claim where
> plaintiff generally described the attacker as a predator but went on to
> complain about the attacker changing the television channel and breaking
> his glasses); *Gray v. Sorrels*, 744 F. App'x 563, 570 (10th Cir. 2018)
> (complaint failed to state a claim even though prison doctors knew plaintiff's
> attacker/cellmate stopped taking his psychotropic medication, as there are
> were no specific warnings that the attacker could become violent). Thus,
> ***any amended complaint should specify whether Plaintiff complained***

---

[1] Judge Vazquez recited in her Memorandum Opinion the amended complaint's allegation that
Harris was "beaten by convicted, sentenced inmate Ricky Stallings and stabbed with an ink pen
type weapon" resulting in scars on his chest. *Doc. 33* at 5.

> *about Stallings prior to the attack, or what specific information*
> *suggested that Stallings posed a danger to Plaintiff.*

*Id.* at 5 (emphasis added).

On January 4, 2021, Plaintiff filed a Second Amended Complaint ("SAC"), which named the same Defendants. *Doc. 36*. In the SAC, Plaintiff refers to a March 4, 2019 "attack" and "assault" by Ricky Stallings who had been sentenced for first degree murder but gives no further details as to the incident. Plaintiff alleges that Defendants, acting under color of state law, violated his constitutional rights because he has "a legal right to be protected while [he is] in the custody of Shane Ferrari, Tom Havel, and other jail officials." *Id*. at 4. Plaintiff asserts jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3) and seeks monetary damages and an injunction ensuring his safety from other violent inmates while in custody. *Id*. at 4-5. Plaintiff also states that he is not an attorney and because he has no knowledge of what statutes "apply in this case, [he] may need legal assistance." *Id.* at 3.

In response to the SAC, I ordered Defendants to prepare an Answer and a *Martinez* Report.[2] *See Doc. 37*. The Order directed that "[i]f the *Martinez* Report is accompanied by a motion for summary judgment, Plaintiff's response [to be filed by April 5, 2021] *must* also address that motion." *Id.* at 2-3 (emphasis added). On January 29, 2021, Defendants filed their Answer. *Doc. 39*. Defendants' *Martinez* Report *(Doc. 43)* and accompanying Motion for Summary Judgment *(Doc. 43–1)* were filed with the Court on March 5, 2021.

---

[2] "A *Martinez* report is a judicially authorized investigative report prepared by prison officials to help the court determine if a pro se prisoner's allegations have any factual or legal basis." *Simkins v. Bruce*, 406 F.3d 1239, 1241 n.2 (10th Cir. 2005) (internal quotation marks omitted).

3

Just before the *Martinez* Report was to be filed, however, Plaintiff submitted documents purporting to be "Apendix/Supplements" [sic] to the SAC *(Docs. 40; 41)* that seek to introduce new claims concerning his medical care. As discussed more fully later, Defendants have moved the Court to strike both documents as improper attempts to amend the pleadings. *Doc. 42*.

On March 5, 2021, Defendants filed the *Martinez* Report with an attached Motion for Summary Judgment *(Docs. 43; 43–1)*. Plaintiff's Response to the Motion for Summary Judgment *(Doc. 48)* focuses solely on "Exhibit 9" that was submitted with the *Martinez* Report to which he was denied access. That exhibit consists of a compact disc containing videos recorded the day of the assault. Plaintiff complains that he has not been given access to Exhibit 9  because detention officials at Central New Mexico Correctional Facility ("CNMCF")[3] confiscated it, "due to security rules for prisoners." *Id*. at ¶¶ 3, 4.[4] Defendants acknowledge that they mailed Exhibit 9 to Plaintiff and "are unaware of the policies of the Central New Mexico Correctional Facility" where Plaintiff was then residing. *Doc. 49* at 4. They persuasively argue that Defendants "should not be delayed or limited in their filings and motions due to the rules and regulations of the Central New Mexico Correctional Facility." *Id.*

After thoroughly reviewing Exhibit 9 and the alleged undisputed facts and viewing the videos in the light most favorable to the allegations in the SAC, the Court concludes

---

[3] In his Notice, Defendant indicates that he was to be transported to NMDOC, a facility in Los Lunas. *See Doc. 40* ¶¶ 3, 6. The facility's actual name is as stated above. *See* https://cd.nm.gov/divisions/adult-prison/nmcd-prison-facilities/central-new-mexico-correctional-facility/, last visited on September 28, 2021.

[4]  Plaintiff's response also includes a new blanket assertion that his rights under the Equal Protection Clause had been violated. *Id.* at 3.

that the Exhibit 9 videos from responding correctional officers' lapel cameras and from fixed security cameras in C2 cannot give rise to a material issue of factual dispute.

The fixed security cameras show the C2 recreation area with a table and chair centrally located. Stallings approaches Plaintiff's cell, enters and exits 45 seconds later. The video does not capture the interior of Plaintiff's cell (identified later as Cell #16). Upon exiting Plaintiff's cell, Stallings gathers some papers on the table and takes them to what is presumably his own cell. He then returns and stands outside Plaintiff's cell for about 30 seconds before eventually approaching the table and taking a seat. Within 15 seconds, the responding officers arrive at C2.

The lapel videos of individual officers capture only the aftermath of the incident, which includes interactions between the officers and Stallings, the officers and Plaintiff, and the officers with each other. The lapel videos substantiate that an altercation occurred and that the correctional officers identified Stallings as the possible culprit and Plaintiff as the victim, but this adds nothing to the inquiry as those facts are undisputed. As to the cause of the fight, Plaintiff explains that Stallings had sold him a radio, and that he wanted it back. The videos do not reveal any indication of a stabbing or severe injuries. Indeed, Petitioner was checked and cleared by medical within minutes of the incident. Finally, Stallings asserts that he was placed in C2 because he and another inmate in C1 had tried to "pop their doors" to attack each other, and officers wanted to keep them separated. No other potentially relevant evidence is found in any of the Exhibit 9 videos. Therefore, even if Plaintiff had access to Exhibit 9, that evidence could not create a material issue of fact preventing the entry of summary judgment in favor of Defendants.

Moreover, Plaintiff does not contend that he was unable to review any other exhibits submitted by the Defendants with the *Martinez* Report or their Motion for Summary Judgment. Yet in his Response to the Motion, Plaintiff neither delineates any material facts in dispute nor comes forward with any evidence in rebuttal. Defendants assert, therefore, that the Court must accept all their Motion's undisputed facts because Plaintiff does not meet the requirements of Federal Rule of Civil Procedure ("Rule") 56 and D.N.M. LR-CIV 56.1(b). *Doc. 49*.

Because Plaintiff proceeds pro se, his pleadings must be construed liberally. Nevertheless, the Tenth Circuit has not exempted pro se prisoners from following the federal rules nor has it indicated that pro se prisoners should receive special notice about procedural issues. *See Halpin v. Simmons*, 234 F. App'x. 818, 820–21 (10th Cir. 2007) (rejecting pro se plaintiff's argument that special notice was required for pro se plaintiffs); *but see Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985) (citing the Ninth Circuit for the proposition that "[d]istrict courts must take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings") (further citation and quotation marks omitted)).

Notably, here, this Court expressly ordered Plaintiff to respond to the *Martinez* Report and any accompanying summary judgment motion. *Doc. 37.* The Order also notified Plaintiff that the *Martinez* Report could be used in deciding whether to grant summary judgment and that Plaintiff could "present conflicting evidence to controvert the facts set out in the report." *Doc. 37 at 2-3*; *see also Ortiz v. Torgenson*, 857 F. App'x 419, 426-27 (10th Cir. 2021) (observing "[w]e have allowed *Martinez* reports to be used

for their truth against a plaintiff if the plaintiff has been warned that failing to respond to the *Martinez* report could lead to that result") (citing *Schlicher v. Thomas*, 111 F.3d 777, 780 (10th Cir. 1997)).

### *Undisputed Facts*

Pursuant to local rules, facts set forth in Defendants' Motion that are not specifically controverted by Plaintiff are deemed undisputed. *See* D.N.M. LR-CIV 56.1(b). The following facts are undisputed, or where disputed, are presented in the light most favorable to Plaintiff.

On January 18, 2019, Plaintiff was arrested and charged with Failure to Appear and Aggravated Driving While Under the Influence of Intoxicating Liquor and/or Drugs (6th or 7th). He was placed on a "No Hold" bond and booked into SJCDC. *Docs. 43–1* ¶ 1; *43–2* ¶ 6b; *43–3*; *43–4*). After Plaintiff spent some time in the Medical Unit, he was transferred to the C2 pod, which has several cells in which different inmates are housed. *Docs. 43–1* ¶ 3; *43–2* ¶ 6d. The "C" pod is designated maximum security. It is used for medical overflow, for disciplinary housing, and to segregate inmates who do not get along or present a security risk. *Doc. 43-1* ¶ 4.

More than three years earlier, on October 4, 2015, Ricky Stallings was arrested for Murder in the First Degree and booked into SJCDC. *Doc. 43–2* ¶¶ 6f-6g. On December 22, 2017, following a jury trial and conviction, Stallings was sentenced to life imprisonment without the possibility of parole. *Doc. 43–8* ¶¶ 2-3, 5-7. However, while at SJCDC, Stallings was involved in offenses that resulted in four separate charges that required him to attend court proceedings in San Juan County. For this reason, rather than a transfer to state prison following sentencing on his murder conviction, Stallings

remained at SJCDC until July 8, 2019. *Doc. 43–2* ¶ 6h.  SJCDC housed Stallings in C2 pod, *Doc. 43–1* at 2, and he was allowed out of his cell at times and permitted to have some contact with other inmates. *Doc. 39* at 4.

It is undisputed that on March 4, 2019, Stallings entered Plaintiff's cell in C2 pod and assaulted Plaintiff. Officers were called to C2 pod, and the response team entered and put the detainees on lockdown. *Doc. 43–7*. The reports of the responding officers state that Stallings punched Plaintiff in the face with a closed fist, and that Plaintiff appeared to be bleeding from his mouth, had blood on his shirt and lacerations on his arms. *Docs. 43–7*; *43–11* at 1-3. Facility medical staff cleared Plaintiff within 20 minutes of the incident. *Doc. 43–7*. There is no evidence before the Court of a stabbing, as alleged in the original complaint, during the encounter. In fact, Defendants' photos taken to document Plaintiff's injuries show only lacerations on Plaintiff's arms. *Doc.43–11.*

Prior to this incident, the officers at SJCDC were not aware of any animosity between Plaintiff and Stallings. *Doc. 43–2* ¶ 6i. Indeed, from January 23, 2019 through May 13, 2019, Plaintiff filed *numerous* grievances – none of which either before or after the altercation included any allegations against Stallings. *Doc. 43–5* at 1-30; *see also Doc. 43–2* ¶¶ 6h, 6m.

The SJCDC investigation resulted in a referral of the incident for prosecution of Stallings and a warrant was sought. *Doc. 43–7* at 5. On March 5, 2019, a criminal complaint was filed against Stallings in San Juan County, and a judicial finding of probable cause found for the petty misdemeanor offense of battery for "unlawfully and intentionally" touching or applying force to Plaintiff in violation of NMSA 1978, § 30-03-04. *Doc 43–10*. Four months later on July 8, 2019, the state court entered a notice of

dismissal of the case pending further investigation and providing that "[c]riminal charges may be refiled at a later time." *Id.*.

At the time of the relevant events, Defendant Tom Havel was the lead administrator at SJCDC *(Doc. 36–1* at 3), and Shane Ferrari served as Sheriff of San Juan County (*Id.* at 1).

## II.   Legal Standards

### *Rule 15(a), Amendment of Pleadings*

A party may amend its pleadings once before a responsive pleading is served. After a responsive pleading, under Rule 15(a)(2), a party may amend a pleading only with the opposing party's consent or absent consent, only with the court's leave. Rule 15(a)(2) further provides that the court should "freely give leave when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resol. Tr. Corp.,* 984 F.2d 1571, 1585 (10th Cir. 1993) (further citation omitted).

### *Summary Judgment Standard*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

Once this initial burden is met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party. *Id*. at 671. The nonmoving party may not rest on his or her pleadings but must set forth specific facts "identified by reference to affidavits, deposition transcripts or specific exhibits incorporated therein" showing there is a genuine issue for trial. *Id.* "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way . . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (internal citations omitted).

A pro se litigant's pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Yet despite being pro se, a non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (citation and internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue that would defeat the motion. *Llewellyn v. Allstate-Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013).

III.    **Analysis**

     ***Plaintiff's Request for Counsel***

     In his SAC, Plaintiff indicates that he may need counsel because he lacks knowledge of the law. *Doc. 36 at 1*. Plaintiff did not follow up this request with a motion for appointment of counsel. Nonetheless, to the extent that Plaintiff's statements can be construed as a request for counsel, there is no such right in a civil case. Instead, the decision whether to request assistance of counsel rests in the sound discretion of the Court. *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1169 (10th Cir. 2003); *MacCuish v. United States*, 844 F.2d 733, 735 (10th Cir. 1988). In determining whether to appoint counsel, the district court should consider the merits of the litigant's claims, the nature and complexity of the factual and legal issues, and the litigant's ability to investigate facts and to present his claims. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).

     The Court has reviewed the Complaint and the subsequent filings in light of these factors. Plaintiff appears to understand the issues in the case and to be representing himself in an intelligent and capable manner. *See Lucero v. Gunter*, 52 F.3d 874, 878 (10th Cir. 1995). The Court recommends that Plaintiff's request for counsel be denied.

     ***Defendants' Motion to Strike***

     As noted earlier, just before Defendants filed the *Martinez* Report, Plaintiff filed two documents in early February 2021 self-identified as "Apendix [sic] and/or Supplement" with claims that would substantively amend the SAC. *Docs. 40*; *41*. In these documents (which the Court will refer to as "Notices"), Plaintiff alleges that he is physically disabled and that SJCDC have denied him medical treatment by not

permitting him to have a hip replacement (*Doc. 40 ¶ 6)* or the use of his walker (*Doc. 41 ¶ 1*). Plaintiff also states that the medical unit in which he was then housed is overcrowded such that he was forced to sleep on the floor. *Doc. 41 ¶ 3*. In support of the Notices, Plaintiff submits three health service requests. *Doc. 40 at 4-5; Doc. 41 at 3*. Plaintiff asks the Court to order his transfer to CNMCF "[a]s soon as possible" (Doc. 40 ¶ 6), where he can presumably get the treatment he seeks. Plaintiff further indicates that he wants "to serve the remainder of his sentence" at CNMCF. *Doc. 41 ¶ 6*.

In Defendants' Motion to Strike, they object to any proposed amendment on three grounds. First, the Order to file a *Martinez* report did not contemplate or authorize further amendment of the SAC. Second, further amendment is improper under Rule 15(a)(2), which requires plaintiffs who seek to amend a complaint after the time limit established in Rule 15(a)(1) to obtain opposing parties' consent or leave of the court – Plaintiff neither sought Defendants' consent nor leave of Court to amend. Finally, the issue raised by the proposed amendment, inadequate medical treatment, is unrelated to the inmate assault issue in the SAC. Plaintiff did not respond to Defendants' Motion to Strike.

Although Plaintiff proceeds pro se, he must still comply with the federal rules, *see Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994), including Rule 15(a)(2). Even if Plaintiff had complied with Rule 15(a)(2), his new allegations are not connected to the causes of action in the operative SAC, and Plaintiff does not factually connect them to the current Defendants.[5] Moreover, his claims no longer present an actual

---

[5] Additionally, the Court agrees with Defendants that if Plaintiff is allowed to continuously file pleadings and add claims, he could circumvent the limitations on prisoner claims in the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.

controversy. In essence, the relief Plaintiff sought through his proposed amendments was a transfer from SJCDC to CNMCF, which occurred on March 4, 2021. *See Doc. 46* ¶¶ 2, 5. It should be noted, however, that as of this date, Plaintiff does not appear to be housed at any correctional facility.[6] Therefore, it appears that Plaintiff's filings fail to allege any medical harms purportedly suffered at SJCDC caused him irreparable injury.[7]

### Defendants' Motion for Summary Judgment

Under § 1983, a person acting under color of state law who "subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prisons officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take 'reasonable measures to guarantee the safety of inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Because Plaintiff was a pretrial detainee, his constitutional protection arises from the Fourteenth Amendment's Due

---

[6] On March 11, 2021, Plaintiff filed a Notice of a Change of Address informing the Court that he had been transported to CNMCF. *Doc. 46* ¶ 2. On September 13, 2021, Plaintiff gave notice to the Court of another change of address. *Doc. 53*. His most recent address appears to be a private residence. *See id*.

[7]  Even if amendment was proper, the Court could no longer grant Plaintiff the injunctive relief he seeks, which is a transfer to CNMCF. *See Burnett v. Fallin*, 785 F. App'x 546, 551 (10th Cir. 2019) (finding that prisoner's claim for injunctive relief based on overcrowding at a correctional facility was mooted by his transfer because "'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects'") (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)); *see also Farmer v. Brennan*, 511 U.S. 825, 846 (1994) ("[T]o establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future.").

Process clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). When analyzing

Fourteenth Amendment claims, courts use an analysis identical to that applied in Eighth

Amendment cases. *Lopez v. LeMaster*, 172 F.3d 756, 764 (10th Cir. 1999).

### Parties' Arguments

Plaintiff contends that because Stallings has a "violent history," Defendants

"should not have housed [Stallings] in general pop." *Doc. 36* at 3. Plaintiff alleges that

"the sherrif [sic] and his administration and jail staff failed to protect [him] from a

convicted and sentenced state prisoner, Ricky Stallings" and that they acted under color

of state law with "deliberate indifference." *Id*. In response to the *Martinez* Report,

Plaintiff makes an additional allegation that he has been denied equal protection of the

laws because "charges against Ricky Stallings were prosecuted to the fullest extent the

law provides, when the victim was a correctional officer." *Doc. 48* at 3.

Defendants argue that Plaintiff asserts a non-existent constitutional right to be

classified in such a way that pretrial detainees are not housed with convicted offenders.

*Doc. 42–1* at 4. Alternatively, they suggest that Plaintiff contends that prison officials

were deliberately indifferent to the risk of serious harm when they housed him with

Stallings. *Id.* at 5. Finally, Defendants ask that the Court dismiss Plaintiff's equal

protection claim because neither Defendant was involved in deciding whether to pursue

or drop charges against Stallings. *Doc. 49* at 3-4.

### Equal Protection Claim

Plaintiff's equal protection claim was included in his response to the Motion.

Procedurally, it is a request to amend his Complaint, and the Court will treat it as such.

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated

14

should be treated alike.'" *A.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016) (quoting *Kitchen v. Herbert*, 755 F.3d 1193, 1222 (10th Cir. 2014) (further citation omitted)). While Plaintiff's proposed amendment does have factual allegations that relate to his existing Complaint, namely the fact of the assault and the resulting charges made against Stallings, Plaintiff has not supported his equal protection claim with plausible allegations against the named Defendants.

Indeed, Plaintiff's claim does not factually connect Defendants with *any* prosecutorial decisions. The Criminal Complaint against Stallings dated March 5, 2019, and the Notice of Dismissal dated July 8, 2019, are signed by a prosecutor. Neither of Defendants' names appear on the documents. In short, Plaintiff fails to tie either Defendant to a decision to drop charges against Stallings in connection with the assault on Plaintiff.

A court should deny leave to amend under Rule 15(a) where the proposed "amendment would be futile." *Jefferson Cty. Sch. Dist. v. Moody's Inv'rs Servs.*, 175 F.3d 848, 859 (10th Cir. 1992). An amendment is futile when the claim would be subject to dismissal because the plaintiff "fails to allege facts that would 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fields v. City of Tulsa*, 753 F.3d 1000, 1012–13 (10th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal alterations omitted)).  Because the only evidence before the Court demonstrates that Defendants did not make any prosecutorial decisions, Plaintiff cannot assert a plausible equal protection claim against them based on a decision to discontinue the assault prosecution. The Court recommends that Plaintiff's motion to amend his Complaint to add an equal protection claim be denied as futile.

***Classification Claim***

When entering the SJCDC facility, inmates are put into one of four classifications: segregated security, maximum security, medium security, or minimum security. *Doc. 43–6* at 1-4. Using its classification procedures, SJCDC staff assign inmates' housing and privileges based on their classification. *Id.* While there is no constitutional right to a certain classification, *see Robards v. Stephan*, 977 F.2d 596 at *2 (10th Cir. 1992) (table), a prisoner does have a liberty interest in his conditions of confinement. *See Est. of DiMarco v. Wyoming Dep't. of Corrs., Div. of Prisons*, 473 F.3d 1334, 1340 (10th Cir. 2007) (observing that "[t]he Supreme Court has held that a protected liberty interest may arise from prison placement decisions and conditions of confinement."). The source of that interest may stem from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). But such policies or regulations "will not create the basis for a liberty interest in the conditions of confinement so long as they do not 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Est. of DiMarco*, 473 F.3d at 1339 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In examining whether there is a liberty interest, a court evaluates whether the specific conditions deviate significantly from a general baseline of prison life. *Id.* at 1340. Relevant factors when evaluating placement may include the penological interest, the conditions, and their duration. *Id.* at 1342.

It is not clear to the Court that Plaintiff is making a classification claim. Conspicuously absent from either parties' briefing is any information about the

16

calculations used to establish Plaintiff's classification or any indication that he objected to it or those guidelines used for classification. Although C2 was a maximum-security pod, it also included medical overflow, which is not encompassed in SJCDC's definition of maximum security.[8] Because Plaintiff was moved from the medical unit to C pod, an inference could be made that officials placed him there as medical overflow. But neither party clarifies this point. Insofar as Plaintiff's argument regarding placement is based on classification, that argument focuses on Stalling's classification, not his own. *See Doc. 36* at 3 (alleging that Stallings should not be in "general pop").

But even if Plaintiff is making a classification claim, the undisputed facts establish Defendants' entitlement to judgment as a matter of law. Plaintiff does not allege or show that he has been treated differently from any other individual detained at SJCDC or that his placement in maximum security affected his privileges. While the evidence establishes that Plaintiff frequently used the facility's grievance procedure,[9] Plaintiff did not appeal his classification. In sum, Plaintiff has made no showing that his classification and placement into C2 pod created "an atypical and significant hardship for him." The Court should grant summary judgment on any claim that might be based upon Plaintiff's classification.

### Deliberate Indifference Claims

---

[8]  Maximum security is defined as: "[a] classification assignment of an inmate who poses a high risk to the security of the facility, the safety of staff, visitors or other inmates. Inmates classified as maximum security require close supervision by detention officers and high-security housing." *Doc. 43-6* at 1. Those who are in a maximum-security pod for disciplinary reasons and those who are high security risks fit within this definition, but medical overflow does not.

[9] Between January 1, 2019 and May 13, 2019, Plaintiff filed at least 30 grievances. *Doc. 43-5* at 1-30.

Next, Plaintiff argues that when a decision was made to place him in C2 pod, Sheriff Ferrari and Mr. Havel were deliberately indifferent to the danger Stallings posed to him. The Eighth Amendment requires officials to "take reasonable measures to guarantee the safety of the inmates," which includes a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832–33 (citation and additional quotations omitted). But "[i]t is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "Deliberate indifference" means that the prison official knew and disregarded an excessive risk to prisoner health or safety. *Id.* at 837.

1.  Claims Against Sheriff Ferrari

To hold Sheriff Ferrari liable, Plaintiff must allege an act or omission by Sheriff Ferrari demonstrating deliberate indifference to a substantial risk Stallings would cause serious harm to Plaintiff. In his SAC, Plaintiff premises his claims against Sheriff Ferrari on the assertion that he was in Sheriff Ferrari's "physical custody" when housed at SJCDC or that Sheriff Ferrari somehow participated in decisions made about Plaintiff's housing. *Doc. 36* at 1. Defendants have come forth with unrebutted evidence that neither Sheriff Ferrari nor the Sheriff's department participate in the SJCDC's operations, which include decisions about where to house pretrial detainees or inmates. *Doc. 43* at 3. Thus, judgment as a matter of law is appropriate as to Sheriff Ferrari.

2**.**   Claims Against Mr. Havel

Plaintiff's claims against Mr. Havel are founded on Mr. Havel's position at SJCDC as a senior administrator at the time of Plaintiff's injuries. *Doc. 36* at 3. Plaintiff has not

clarified whether he is suing Mr. Havel in his official capacity or his individual capacity. Regardless, he has not established a factual basis for either.

a. *Claims based on individual capacity*

Plaintiff does not allege that Mr. Havel was personally involved in the events that led to his assault. Generally, a "plaintiff must show the defendant personally participated in the alleged [constitutional] violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Supervisory status alone is not enough to show personal participation, as each official is only liable for his or her own misconduct. *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 767 (10th Cir. 2013). Plaintiff must show three elements "to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind." *Id*. The unrebutted evidence belies a factual basis for any of these elements.

Plaintiff contends that his constitutional rights were violated when he was housed with a violent offender. His claim against Mr. Havel singularly relies on his assertion that Mr. Havel knew that Stallings had assaulted other inmates and a correctional officer. Assuming *arguendo* that Mr. Havel knew about the previous assaults, such knowledge does not support a conclusion that Mr. Havel effectuated, knew of or acquiesced to Plaintiff's placement in C2 with Stallings. And, even if Mr. Havel was aware of Plaintiff's placement, to demonstrate personal involvement, a plaintiff must establish "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Id*. at 767.

To avoid the entry of summary judgment in favor of a defendant on the causation element, Plaintiff must demonstrate that the "defendant's alleged action(s) caused the constitutional violation." *Id*. at 768. "'A plaintiff [must] establish the 'requisite causal

connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Id*. (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (additional citation omitted)). Other than Mr. Havel's position as an administrator at SJCDC, Plaintiff has not shown any tie between Mr. Havel's work at SJCDC and the decision to put Plaintiff in C2 pod.

The last element demands that Plaintiff show that Mr. Havel took certain actions with deliberate indifference. To prove deliberate indifference, a plaintiff must demonstrate that the defendant was "aware of facts from which the inference could be drawn that as substantial risk of serious harm exists, and he must also draw the inference." *Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal alternation omitted)). "'Merely negligent conduct is not enough to state a claim." *Dodds*, 614 F.3d at 1204.

Plaintiff does not dispute Defendants' evidence that prior to his assault correctional officials did not know of any dispute between Plaintiff and Stallings. Nor does Plaintiff establish a factual basis for the inference that Stallings would continue to assault others. Knowledge that an inmate has assaulted other inmates in the past does not inexorably lead to the conclusion that he will assault other inmates. Because the evidence before the Court cannot lead to an inference that Mr. Havel knew of a serious risk of harm to Plaintiff, Defendant Havel is entitled to the entry of summary judgment in his favor on claims against him in his individual capacity.

> b.    *Claims based on official capacity*

A suit against Mr. Havel in his official capacity is a suit against the "entity of which an officer is an agent," *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), which, here, is SJCDC or, more precisely, San Juan County. "A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiffs." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). To succeed in an official capacity suit, a plaintiff "must identify a government's policy or custom that caused the injury" and that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 770 (internal citations and quotations omitted). Thus, a plaintiff must establish three elements: (1) an official policy or custom, (2) causation, and (3) state of mind." Id. at 769.

Simply put, Plaintiff fails to establish a factual basis for any of these elements. Perhaps the closest he comes may be an inferred argument that the "custom" of housing pretrial detainees with convicted inmates may constitute a  Fourteenth Amendment due process violation if it results in injury to the pretrial detainee. Such an argument seems anchored to the application of a pretrial detainee's presumption of innocence. The Supreme Court addressed that presumption in the context of custodial conditions.

> Without question, the presumption of innocence plays an important role in our criminal justice system. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895). But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.

*Bell v. Wolfish*, 441 U.S. 520, 533 (1979). It would therefore appear that such a housing placement policy or custom alone cannot demonstrate deliberate indifference to the safety of inmates in the custody of a detention facility. *See, e.g., Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (argument that "the risk that an inmate with a history of violence might attack another inmate for an unknown reason" rejected because it was a "speculative risk"); *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (per curiam) (affirming the district court's grant of summary judgment against a pretrial detainee because "a general risk of violence in a maximum security unit does not by itself establish knowledge of a substantial risk of harm.").

Plaintiff also contends that by itself, a policy of housing non-violent inmates in general population with inmates who have demonstrated violent tendencies violates the Constitution.

> This argument is meritless. On its face the County's housing policy does not violate the Constitution. *See, e.g., Barreto*, 762 F. Supp. 2d at 491; *Yergeau v. Vt. Dep't of Corr.*, No. 09-CV-0141, 2010 WL 1472899, at *1 (D. Vt. Mar. 8, 2010) ("Specifically, [the prisoner] has not cited any provision of federal law that prohibits housing violent and non-violent offenders in the same prison unit."); *Kunkle v. Cox*, No. 08-CV-0100, 2010 WL 5391600, at *11 (N.D. Ind. Dec. 22, 2010) ("[T]here is no constitutional requirement that inmates be classified by security level.").

*Barreto v. Cty. of Suffolk*, No. 10-CV-0028, 2016 WL 5678613, at *8 (E.D.N.Y. Sept. 30, 2016). The *Barreto* court noted that deliberate indifference is not necessarily found even where the assaulting inmate "had a propensity for attacking other inmates . . . " *Id.* at 9. Such a "track record does not automatically indicate a constitutional violation on the part of the [defendant], especially because inmates always face a risk of violence." *Id.* Thus, Plaintiff fails to set forth specific facts showing there is a genuine issue of fact that Defendants' housing policies reflect deliberate indifference to inmates' safety.

In sum, the uncontroverted evidence reveals no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law on all claims.

Wherefore,

**IT IS RECOMMENDED AS FOLLOWS:**

1.      Plaintiff's request for counsel be DENIED;

2.      Defendants' Motion to Strike *(Doc. 42)* be GRANTED, and Plaintiff's

 Supplements *(Docs. 40 & 41)* be STRICKEN;

3.      Plaintiff's request to amend his Second Amended Complaint to add an

  equal protection claim be DENIED;

4.      Summary judgment be entered for Defendants on all claims;

5.      The Second Amended Complaint be DISMISSED WITH PREJUDICE; and

6.      Plaintiff's Motion to Set Case for Jury Trial *(Doc. 52)* be DENIED as moot.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE